UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JASON FREEDMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 16-cv-11151-DJC |
| ) | |
| ASIF ALI, EDWARD BURKE, ) | |
| NICHOLAS MOCHI and ) | |
| LESTER SULLIVAN, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER

CASPER, J.                                                                                                                 November 14, 2018

## I. Introduction

Plaintiff Jason Freedman ("Freedman") brings claims against officers of the Cambridge Police Department, Asif Ali, Edward Burke, Nicholas Mochi and Lester Sullivan ("the Defendants") arising out of events surrounding his arrest on November 14, 2013. D. 1. The Defendants now move for summary judgment. D. 46. For the foregoing reasons, the Court ALLOWS in part and DENIES in part the Defendants' motion.

## II. Standard of Review

The Court will grant summary judgment "only when the record reflects to genuine issues as to any material fact and indicates that the moving party is entitled to judgment as a matter of law." Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009). A genuine dispute of material fact exists where the evidence with respect to that fact "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of demonstrating the absence of a genuine dispute of material fact

1

and that it is entitled to judgment as a matter of law. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). The court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (citation omitted).

Qualified immunity is a defense that a public official may assert against claims "from personal liability for actions taken while performing discretionary functions." Barton v. Clancy, 632 F.3d 9, 21 (1st Cir. 2011) (quoting Lynch v. City of Boston, 180 F.3d 1, 13 (1st Cir. 1999)). The qualified immunity analysis requires a court to decide '(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.'" Id. at 21-22 (quoting Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)). Moreover, the assertion of a qualified immunity defense may not necessarily be resolved as a matter of law, particularly where the resolution of same involves factual disputes. See Penn v. Escorsio, 764 F.3d 102, 112 (1st Cir. 2014); Prokey v. Watkins, 942 F.2d 67, 73 (1st Cir. 1991) (holding that "if what the policeman knew prior to the arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause would differ depending on the correct version, that factual dispute must be resolved by a fact finder").

### III. Factual Background

The following facts are undisputed unless otherwise noted and are taken from the parties' submissions, D. 47, D. 52, D. 56. On the evening of November 14, 2013, Freedman and several other individuals took part in a labor picket in front of Insomnia Cookies, an establishment in Cambridge, Massachusetts. D. 47 ¶ 1; D. 52 ¶ 1. There were approximately fifteen participants, who demonstrated by walking in a circle on the sidewalk in front of Insomnia Cookies, chanting,

singing, and distributing literature. D. 47 ¶¶ 2-4; D. 52 ¶¶ 2-4. Geoffrey Carens, another individual participating in the picket, used a megaphone at times during the picket. D. 47 ¶ 5; D. 52 ¶ 5. The picketers made it "a point to always let people come in and out and pass" them on the sidewalk. D. 52 ¶ 14; D. 56 ¶ 14.

At some point, the Defendants, all uniformed patrol officers with the Cambridge Police Department, arrived at the picket. D. 47 ¶¶ 6-8; D. 52 ¶¶ 6-8. Ali approached Carens and other picketers and told them to "try to move over to" to a median, or "island" in the middle of the street and off the sidewalk. D. 47-7 at 15; D. 47 ¶ 9; D. 52 ¶ 9. Ali described his action as "trying to convince the individuals to move over" but also stated that he "tried to really say, All right, you guys got to move to this location" and stated that he did "tell some of the individuals that you have to move." D. 54-1 at 32. Carens and the other picketers did not move to the island. D. 47 ¶ 11; D. 52 ¶ 11. Burke and Ali requested that Carens turn off the megaphone and Carens complied. D. 47 ¶¶ 12-13; D. 52 ¶¶ 12-13. According to Freedman and Carens, Ali and Burke then stopped Carens, "grabb[ed] his arms and chest and push[ed] him out of the picket line," pushing Carens backwards such that Carens was pushed into the street. D. 47-1 at 20; D. 47-10 at 13-16; D. 47 ¶¶ 14-15; D. 52 ¶¶ 14-15. After that, several picketers, including Freedman, began protesting Ali's and Burke's actions towards Carens. D. 47 ¶ 16; D. 52 ¶ 16. Freedman was holding a flag on a flagpole in one hand as the flag leaned against his shoulder. D. 47 ¶ 17; D. 52 ¶ 17; D. 53-1 at 22. Freedman was standing about three feet away from Burke and Ali at the time that Freedman began protesting Ali's and Burke's actions and Burke and Ali were not facing Freedman at that moment. D. 47 ¶¶ 17-18; D. 52 ¶¶ 17-18.

The events immediately after the picketers began to protest the treatment of Carens are disputed. According to Ali, after the altercation with Carens, Freedman "used a wooden flagpole

3

and shoved Officer Burke in the chest area with this pole," and Ali then "attempted to restrain" Freedman. D. 54-1 at 48-49. According to a witness, Burke responded to Freedman's verbal protest by grabbing the picket flag Freedman was holding and pulling it towards his own body, stating "are you assaulting me with this stick" while tapping his own chest with the flag. D. 52 ¶¶ 28-30; D. 56 ¶¶ 28-30; D. 53-5 at 20-21. Another witness testified that Freedman made no "forward movement" but that the officers "were encroaching on his physical space," "put their hands on him," and then "jumped on him." D. 53-2 at 28. According to Freedman, Ali and Burke then started pushing Freedman approximately five seconds after they pushed Carens, "getting up in [Freedman's] face, pushing [Freedman], grabbing [Freedman] and pushing [Freedman] backwards," and Freedman responded by "try[ing] to backpedal away from them." D. 47-1 at 23-24; D. 47 ¶ 19; D. 52 ¶ 19. According to another witness, the other officers started to "jump[] in" to "subdue" Freedman and "pull[] him down together." D. 53-5 at 21. Freedman stated in his deposition that he was eventually pushed such that he "fell against" a parked car, caught "between the curb, the gutter and the car." D. 47-1 at 25.

There is a video of at least part of the interaction between Freedman, Burke, and Ali. The parties dispute whether the video depicts Burke or Mochi grabbing Freedman by the arm or Freedman physically struggling against Burke, Ali, and Mochi. D. 47 ¶¶ 20-21; D. 52 ¶¶ 20-21.[1] The video begins once Freedman is already surrounded and being held by the officers. D. 47 ¶¶ 21-22; D. 52 ¶¶ 21-22. It is undisputed that Ali and Mochi brought Freedman to the ground while Sullivan placed his knee on Freedman's legs in order to prevent Freedman from moving. D. 47 ¶ 24; D. 52 ¶ 24. According to Freedman, he was attempting to comply with the officers' instructions

---

[1] Unlike the videotape at issue in Scott v. Harris, 550 U.S. 372, 380 (2007), upon which the Defendants rely, the videotape at issue here does not resolve the factual dispute between the parties because the view of Freedman is blocked by several other persons for most of the videotape.

4

at this time, but it was difficult for him to do so because multiple officers were pulling on him simultaneously, potentially working at cross-purposes. D. 52 ¶¶ 44-51; D. 56 ¶¶ 44-51; D. 54 at 114. Also according to Freedman, his face hit the ground, he felt "blows to his body," "knees in his back," and felt that "someone was sitting on his legs and twisting his arm." D. 52 ¶ 40; D. 56 ¶ 40.

Ali then placed Freedman under arrest. D. 47 ¶ 25; D. 52 ¶ 25. Freedman was transported to the Cambridge Police Department, where he was treated by two paramedics for a scrape on his nose and received, at his request, a sling for his left arm. D. 47-15 at 7; D. 47 ¶¶ 31-32; D. 52 ¶¶ 31-32. During the early morning hours of November 15, 2013, Ali completed and signed an application for a criminal complaint against Freedman asserting charges for assault and battery on a public employee, resisting arrest and disorderly conduct. D. 47 ¶¶ 39, 41; D. 52 ¶¶ 39, 41. Burke, Ali, Mochi and Sullivan wrote reports relating to the events of that evening. D. 52 ¶ 60; D. 56 ¶ 60. On November 15, 2013, Freedman was arraigned in Cambridge District Court, D. 47 ¶ 43; D. 52 ¶ 43, and was released on his own recognizance. D. 47 ¶ 45; D. 52 ¶ 45. On July 20 and July 21, 2015, a criminal trial was held, during which Ali, Burke, and Mochi testified, and Freedman was acquitted of all charges. D. 47 ¶ 46; D. 52 ¶ 46; D. 52 ¶¶ 61-62; D. 56 ¶¶ 61-62.

## IV. Procedural History

Freedman filed his complaint on June 20, 2016. D. 1. On October 28, 2016, the Defendants moved to dismiss the complaint. D. 14. The Court (O'Toole, J.). denied that motion. D. 29. On January 26, 2018, the case was reassigned to this session of the Court. D. 39. The Defendants have now moved for summary judgment. D. 46. The Court heard argument from the parties on the motion and took the matter under advisement. D. 62.

## V. Discussion

### A. Count I: 42 U.S.C. § 1983, Unlawful Arrest in Violation of the Fourth Amendment

The Defendants contend they are entitled to qualified immunity with respect to Count I, Freedman's claim under 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth Amendment. A claim for unlawful arrest requires a showing that the officer did not have probable cause to perform the arrest. Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004). "Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators." Id. The Defendants contend that there was probable cause to arrest Freedman for interfering with a police officer, resisting arrest, disorderly conduct, and assault and battery on a public employee.

The elements of interfering with a police officer are "intimidat[ing], hinder[ing] or interrupt[ing] a police officer in the lawful course of his or her duty." Wilber v. Curtis, 872 F.3d 15, 21 (1st Cir. 2017) (citation omitted). The Defendants contend that probable cause existed to arrest Freedman for this crime because, they contend, the Defendants issued a lawful order for the protestors to move to the island; Carens did not comply, providing probable cause for the Defendants to arrest Carens; and, following that lawful arrest, Plaintiff stood within three feet of Ali and Burke holding a flag – an object they contend could reasonably have been perceived as a weapon – and protested the Defendants' actions. D. 48 at 6-7. The record, however, is not undisputed as to this matter. It is at least disputed whether Freedman was "hindering" or "interrupting" the Defendants in the lawful course of their duty and, more significantly, whether Freedman was "intimidating" the Defendants by standing three feet away from them and holding a flag in one hand that was leaned against his shoulder.

6

The Defendants also contend that the undisputed record provides probable cause for arresting Freedman for resisting arrest and disorderly conduct because they contend that the video shows that Freedman struggled against the Defendants' efforts to control him. D. 48 at 8. "A defendant resists arrest if 'he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another.'" Commonwealth v. Sylvia, 87 Mass. App. Ct. 340, 341–42 (2015) (quoting Mass. Gen. L. c. 268, § 32B(a)). Conduct that includes "an active, physical refusal to submit to the authority of the arresting officer," such as stiffening the arms and pulling the arms away as an officer is attempting to handcuff the defendant, or pulling away from an officer, constitutes resisting arrest. Id. A defendant commits disorderly conduct if he, "with the purpose to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof," engages in "fighting or threatening, or in violent or tumultuous behavior" or creates "a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." Commonwealth v. Mulvey, 57 Mass. App. Ct. 579, 582 (2003).

As attested to by Freedman, he was attempting to comply with the Defendants' instructions but was physically unable to do so because multiple officers were holding him. D. 52 ¶¶ 44-51 (citing Freedman's deposition). The Defendants contend that the video contradicts Freedman's account such that the Court should discredit Freedman's statements contrary to the video. D. 48 at 8. Where, however, it is ambiguous whether the video contradicts the non-movant's account, the court must still view the record in the light most favorable to the non-movant for the purposes

of adjudicating the summary judgment motion. See Morris v. Leblanc, 674 F. App'x 374, 378 n.6 (5th Cir. 2016).

Here, the video does not clearly depict the nature of Freedman's actions since the video is shot at night and, at times, the officers themselves block the view of Freedman. The video shows that several officers have their hands on Freedman, at times simultaneously, so although pushing or pulling occurs, the video does not contradict Freedman's statement that he was unable to comply with one officer's commands because he was physically prevented from doing so. Additionally, due to the sound of the picketers chanting, it is difficult to understand from the video the instructions being given to Freedman, and thus the video is ambiguous with respect to whether Freedman was attempting to comply with the instructions being given. Thus, the record remains disputed as to whether the evidence supports probable cause for Defendants to have arrested Freedman for resisting arrest or disorderly conduct.

Finally, the Defendants argue that there was probable cause to arrest Freedman for assault and battery on a public official because they contend that the video depicts Freedman pushing Ali, Mochi, and Burke. A defendant commits assault and battery on a public official when he "touches [a public official] without having any right or excuse to do so and the defendant's touching was intentional," provided that the defendant knew that the victim was a public employee engaged in the performance of his duties at the time of the putative assault. Commonwealth v. Gonzalez, 71 Mass. App. Ct. 1118, 2008 WL 1069497, at *2 (2008). As noted above, however, the video does not conclusively show the course of conduct between Freedman and the officers, and for that reason, the Defendants are not entitled to qualified immunity on this count.

**B.     Count II:  42 U.S.C. § 1983, Retaliation in Violation of the First Amendment**

Freedman asserts a Section 1983 claim for retaliation in violation of the First Amendment, contending that the Defendants unlawfully arrested and prosecuted him in retaliation for participating in a lawful picket and protesting the arrest of Carens.  For such a claim, a plaintiff must prove that his conduct was constitutionally protected and that the protected conduct was a "motivating" factor in the decision to take the retaliatory action.  Nuon v. City of Lowell, 768 F. Supp. 2d 323, 335 (D. Mass. 2011) (citing Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994)).

The Defendants contend they are entitled to qualified immunity with respect to Freedman's retaliation claim because there is nothing in the record that would support an inference that the Defendants' arrest and prosecution of Freedman was motivated by Freedman's protected conduct; because Freedman's conduct was not protected conduct since it obstructed an investigation, jeopardized officer safety, or violated an order by an officer; and because there was probable cause for the arrest and prosecution.  D. 48 at 12-15.  As to the first argument, a reasonable jury could infer from Freedman's protesting of the Defendants' actions against Carens and the proximity and circumstances of Defendants' arrest of Freedman that Freedman's protected conduct was a motivating factor.  As to the second argument, as discussed above, the undisputed record does not show that Freedman was obstructing an investigation, jeopardizing officer safety, or violating an order by an officer.  Here, by contrast to Abraham v. Nagle, 116 F.3d 11, 14 (1st Cir. 1997), upon which the Defendants rely, D. 48 at 13, the record remains disputed as to whether Freedman failed to comply with a direct order from the officers on the scene.  As to the third argument, the Court has explained above why there is a genuine dispute of material fact regarding whether there was probable cause to arrest Freedman.

### C. Count III: 42 U.S.C. § 1983, Excessive Force in Violation of the Fourth Amendment

Freedman also asserts a claim under 42 U.S.C. § 1983 against the Defendants for using excessive force in violation of the Fourth Amendment. To bring a claim for excessive force, a plaintiff must show that "the defendant officer employed force that was unreasonable under the circumstances." Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (citation omitted). Factors relevant to determining the reasonableness of the force are: "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989) (alteration in original)). The Defendants contend that they are entitled to qualified immunity because Freedman was arrested on charges of assault and battery on a public employee, resisting arrest, and disorderly conduct, which they contend were sufficiently serious to warrant the exercise of some force, and because, by contrast, Freedman's injuries were minimal in nature. D. 48 at 16-17. It is well established that Freedman's injuries, even if minor, can ground an excessive force claim if sufficiently unjustified. See Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (holding that "even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect" (quoting Zivojinovich v. Barner, 525 F.3d 1059, 1071 (11th Cir. 2008)). On the present disputed record, whether the officers' actions were proportional to the crime(s) that they allege Freedman committed and the danger he posed will be for the factfinder to decide.

The Defendants cite, in support of their argument that they are entitled to qualified immunity, Dean v. City of Worcester, 924 F.2d 364 (1st Cir. 1991) and LaFrenier v. Kinirey, 478 F. Supp. 2d 126 (D. Mass. 2007). In Dean, the officers reasonably believed that the arrestee was "an escaped felon who posed a serious safety threat to the officers and others," "was armed, had

threatened to shoot any officer attempting to apprehend him, and had an extensive record of violent crimes." Dean, 924 F.2d at 368. In LaFrenier, it was undisputed that the arrestee "actively resisted arrest and attempted to flee the scene throughout the encounter," and engaged in "violent behavior" that "clearly posed an immediate threat to himself and the officers." LaFrenier, 478 F. Supp. 2d at 138. Here, by contrast, taking the facts in the light most favorable to Freedman as described above, there is a disputed record as to this claim and the officers' defenses to this claim.

### D. Count IV: 42 U.S.C. § 1983, Malicious Prosecution in Violation of the Fourth Amendment

Freedman has withdrawn his claim under federal law for malicious prosecution. D. 51 at 1 n.1. Accordingly, the Court ALLOWS the Defendants' motion for summary judgment with respect to Count IV.

### E. Count V: False Imprisonment

Freedman also brings a claim for false imprisonment against the Defendants. The elements of false imprisonment are "(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 55 (D. Mass. 2000). "Any restraint, even without physical contact, is sufficient to constitute false imprisonment." Id. Given this broad definition, there is no dispute that Freedman was confined by police on the scene and then for the purposes of arrest and transport. This claim, therefore, will turn upon the factfinder's resolution of justification of confinement for Freedman and cannot be resolved here on this disputed record on summary judgment.

### F. Count VI: Malicious Prosecution

Freedman also brings a claim for malicious prosecution under Massachusetts law against the Defendants. To prove a claim of malicious prosecution under Massachusetts law, a plaintiff

"must show that [the defendant] instituted criminal proceedings against [him] with malice and without probable cause and that those proceedings terminated in favor of [the plaintiff]." Correllas v. Viveiros, 410 Mass. 314, 318 (1991). The Defendants contend that there is no genuine dispute of material fact regarding Freedman's state law malicious prosecution claim because there was probable cause for the arrest. D. 48 at 21. The Court explained its reasons for rejecting that argument above.

The Defendants also contend that there is no genuine dispute of material fact regarding the liability of Burke, Mochi and Sullivan for malicious prosecution, because only Ali instituted the criminal proceeding against Freedman. D. 48 at 21. "It is well established that a person need not swear out a criminal complaint in order to be held answerable for malicious prosecution." Correllas, 410 Mass. at 318. "[A]n individual may be said to have instituted criminal proceedings against another if he caused those proceedings to be initiated," which includes "induc[ing] another person (say, a police officer or prosecutor) to lodge formal criminal charges." Limone v. United States, 579 F.3d 79, 89 (1st Cir. 2009). Freedman contends that Burke, Mochi and Sullivan induced the prosecutor to lodge criminal charges because they authored reports that falsely stated that Freedman initiated the physical contact with Burke that evening. D. 51 at 19-20. Other judges have previously held that action by officers to collaborate to write intentionally inaccurate reports to justify an arrest can be considered to "cause" the initiation of criminal proceedings for the purposes of a malicious prosecution claim. Ciolino v. Eastman, 128 F. Supp. 3d 366, 377 (D. Mass. 2015) (denying summary judgment as to a malicious prosecution claim); see Goddard v. Kelley, 629 F. Supp. 2d 115, 130 (D. Mass. 2009) (noting that "[s]omeone who, in bad faith, provides information to a police officer that results in that officer submitting a complaint against another may also be liable"). Freedman's reliance on the "reports" written by the various officers,

12

however, does not save this claim, particularly where all but Ali's report was a "use of force" reports, D. 57 at 13 n.11, and there was no support in the record that these latter reports were relied upon, or induced the prosecution of Freedman. Nor does the fact that officers Ali, Mochi and Burke, were later called to testify at the trial support Freedman's showing that such criminal proceedings were instituted against him with malice. Accordingly, the Court ALLOWS the Defendants' motion for summary judgment as to Count VI as to Defendants Burke, Mochi and Sullivan.

### G. Count VII: Massachusetts Civil Rights Act ("MCRA")

Finally, Freedman brings a claim under the MCRA against the Defendants. That statute provides that "any person or persons, whether or not acting under color of law, [who] interfere[s] by threats, intimidation or coercion, or attempt[s] to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth" may be held liable. Mass. Gen. L. c. 12, §§ 11H, 11I. "The MCRA contemplates a two-part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do." Morrissey v. Town of Agawam, 883 F. Supp. 2d 300, 314 (D. Mass. 2012). The Defendants contend they are entitled to qualified immunity on this count because the record does not show that the Defendants acted to cause Freedman to give up something that he had the constitutional right to do. D. 48 at 22. In support of this argument, the Defendants cite to Lund v. Henderson, 22 F. Supp. 3d 94, 106 (D. Mass. 2014). In that case, the court explained that the plaintiff's arrest without probable cause and the use of excessive force could not be both the threat, intimidation, or coercion and the constitutional right at issue, because it would not make sense to

13

say that the unlawful arrest and excessive force were used to cause the plaintiff to surrender his right to be free from an unlawful arrest and excessive force. Id. at 106.

In this case, however, Freedman contends that the unlawful arrest and excessive force were a form of threat, intimidation, or coercion to cause Freedman to surrender his constitutional right to picket or criticize the police. D. 51 at 20-21. Freedman contends that the allegedly unlawful arrest of Freedman "was coercion that deprived [Freedman] of his First Amendment right to engage in expressive activity," namely, the picket and criticism of the police. D. 51 at 23. For the same reasons that a reasonable jury could conclude that Freedman's protected conduct was a "motivating factor" in the Defendants' decision to arrest him, as discussed above with respect to Count II, a reasonable jury could conclude that the allegedly unlawful arrest and excessive force were motivated by a desire to intimidate or coerce Freedman into surrendering his First Amendment right to engage in picketing or criticism of the police. This case is, therefore, distinct from Lund, because unlike the plaintiff in that case, Freedman alleges an interference with a right – the First Amendment right to engage in expressive activity – separate from the right to be free from unlawful arrest and excessive force. Thus, the Court DENIES the Defendants' motion for summary judgment with respect to Count VII.

## VI. Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment, D. 46, is ALLOWED with respect to Count IV (malicious prosecution under federal law) as to all the Defendants and Count VI (malicious prosecution under state law) with respect to Burke, Mochi and Sullivan, and is DENIED in all other respects.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge